**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

RICHARD H. LIVINGSTON,

                                Plaintiff,

        v.

                                                No. 9:19-CV-0353
WILLIAM HOFFNAGLE, et al.,                       (GLS/CFH)

                                Defendants.

───────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

Richard H. Livingston
326 N. Beech Street
Syracuse, New York 13207
Plaintiff pro se

Attorney General for the               CHRISTOPHER J. HUMMEL, ESQ.[1]
    State of New York                   Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

        Plaintiff pro se Richard H. Livingston ("Plaintiff"), an inmate who was, at all

relevant times, in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983,

alleging that defendants Correctional Sergeant ("Sgt.") William Hoffnagle, Correction

───────────────────

[1]  The undersigned bears no relation to counsel for defendants.

[2]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Officer ("C.O.") Dustin Hollenbeck, and C.O. Chris King—who, at all relevant times were employed at Upstate Correctional Facility ("Upstate")—violated his constitutional rights under the First and Eight Amendments.  See Dkt. No. 1 ("Compl.").[3]

Presently pending before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 12.  Plaintiff did not file a response.[4]  For the reasons that follow, it is recommended that defendants' motion be granted in part and denied in part.

# I. Background

## A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the non-moving party.  See section II.A. infra.  At all times relevant to this complaint, plaintiff was incarcerated at Great Meadow Correctional Facility ("Great Meadow").  See generally Compl.  On August 1, 2017, plaintiff was transferred from Clinton Correctional Facility ("Clinton") to Upstate,[5] where he was to be housed in solitary confinement for six

---

[3] Following initial review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), Senior District Judge Gary L. Sharpe dismissed certain claims with and without prejudice.  See Dkt. No. 4.  The Court dismissed plaintiff's Fourteenth Amendment Due Process and Equal Protection Claims.  See Dkt. Nos. 1, 4.  Further, Judge Sharpe's Decision and Order dismissed plaintiff's claims insofar as plaintiff sought monetary damages against defendants in their official capacity pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915(A) as barred by the Eleventh Amendment.  See Dkt. No. 4 at 8.

[4] In lieu of filing a response, plaintiff submitted a letter stating that he relied "solely" on a previous report and recommendation in a separate case arising out of largely the same facts and circumstances as alleged herein in which Magistrate Judge Peebles recommended granting defendants' motion to dismiss plaintiff's prior complaint on the basis that plaintiff failed to exhaust administrative remedies, but "note[d] that 'the outcome could very well have been different if plaintiff had, in fact, permitted the thirty-day period to elapse prior to commencing [that] suit."  Dkt. No. 14 (quoting Livingston v Hoffnagle et al., 9:17-CV-1158 (MAD/DEP), Dkt. No. 28 at 18 n.11).

[5] Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined for twenty-three hours each day, primarily for disciplinary reasons. Samuels v. Selsky, No. 01-CV-8235 (AGS), 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

months as a result of his involvement in an altercation with another inmate at Clinton.

See Compl. at 5 ¶ 8; Dkt. No. 1-1 at 2.  Upon his arrival to Upstate, plaintiff requested

that Sgt. Hoffnagle, the area supervisor, place him in protective custody because "he

was in fear for his life and safety" as a result of the prior altercation, which he

characterized as a "gang attack."  Compl. at 5 ¶ 8.  According to plaintiff, the inmate

with whom he had engaged in an altercation at Clinton was a gang member and had

initiated the fight with plaintiff.  See id.  However, plaintiff "had gotten the best of" him,

which plaintiff believed became widely known throughout DOCCS.  Id.  Therefore,

plaintiff asserts, he was worried that a gang member at Upstate would retaliate against

him.  See id.  Plaintiff alleges that, in response to his request for protective custody, Sgt.

Hoffnagle directed his two subordinates, C.O. Hollenbeck and C.O. King, "to dissuade"

plaintiff from requesting protective custody.  Id. at 12 ¶ 45.

Plaintiff states that defendants "tortured" him by locking him in a holding cell,

"chained and handcuffed tightly," with no food, water, or bathroom access between 1:00

P.M. and 6:30 P.M.  Id. at 9 ¶ 39, 5 ¶ 12.  He asked defendants "over 10 times" to

loosen his chains and handcuffs, for water, and to use the bathroom "for relief," but

defendants ignored his requests.  Id. at 6 ¶ 13, 10 ¶ 40.  Between 5:30 P.M. and 6:30

P.M., plaintiff "threaten[ed] to file grievances and lawsuits" against defendants based on

"constitutional violations."  Id. at 6 ¶ 15.  In response, C.O. King told plaintiff that "the

Sgt. wants to write plaintiff a ticket" and that "he was instructed to write a misbehavior

report" based on plaintiff's "refus[al] of a direct order to lock into a cell," which plaintiff

denies, stating that "this was not the case."  Id. at 6 ¶¶ 17, 18.  Sometime between 6:00

p.m. and 6:30 p.m., plaintiff was placed in a cell with a "violent gang banger,"

purportedly in contravention of DOCCS Directive No. 4003B, and given a tray of food

that was "freezer cold." Id. at 6 ¶ 20.  Plaintiff states that he was housed with this

inmate as "punishment" for requesting protective custody.  Id. at 6 ¶ 20, 7 ¶ 22.  Plaintiff

alleges that being housed with this "gang member" caused him "psychological pain" and

loss of "sleep for days in fear of his life." Id. at 11 ¶ 43.

On August 3 and August 7, 2017, plaintiff filed two nearly identical grievances

concerning the events that occurred on August 1, 2017.  See id. at 7; Dkt. No. 1-1 at 4,

5.  On September 25, 2017, plaintiff's grievance was denied.  See Dkt. No. 1-1 at 10-11.

Plaintiff appealed the denial to Central Office Review Committee (CORC).  See id. at

12.  On December 12, 2018, CORC denied plaintiff's appeal as without merit.  See id. at

16.

## II. Discussion[6]

### A.  Legal Standard for Motions Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a

plaintiff's "failure to state a claim upon which relief can be granted."  When considering

such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all

factual allegations in the complaint as true, and drawing all reasonable inferences in

plaintiff['s] favor.  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009)

(quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation

marks omitted).  However, this "tenet is inapplicable to legal conclusions, and

threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations

omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief

that is "'plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not

impose a probability requirement . . . it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence of illegal [conduct]."));  see also Arar v.

Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts

require enough facts to state a claim to relief that is plausible . . . .") (internal quotation

marks and citation omitted).  Determining whether plausibility exists is "a context-

specific task that requires the reviewing court to draw on its judicial experience and

common sense."  Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Treistman v Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a *pro se* litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into *pro se* submissions claims
> that are not consistent with the *pro se* litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by *pro se* litigants, and that *pro se* status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v

Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a

court is obligated to construe his pleadings liberally.") (internal quotation marks and

citations omitted).


### B.  Eighth Amendment

Inmates enjoy an Eighth Amendment protection against the use of excessive

force and may recover damages for its violation under § 1983.  Hudson v. McMillian,

503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and

unusual punishment precludes the "unnecessary and wanton infliction of pain."  Sims v.

Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Gregg v. Georgia, 428 U.S. 153, 173

(1976)).


### 1. Excessive Force

Plaintiff alleges that defendants used excessive force in violation of his Eighth

Amendment rights by applying his chains and handcuffs too tightly.  Compl. at 10 ¶¶ 12,

41.  Plaintiff states that the tightness of the chains and handcuffs caused "soreness."

Id. at 10 ¶ 41.  He further contends that he "asked over 10 times" for his handcuffs and

chains to be loosened and "continued to complain about the tightness and soreness for

[six] hours," but defendants refused to loosen the chains and handcuffs.  See id. at 6 ¶

14.  He alleges that the chains and handcuffs were applied tightly in order to make him

"break[] down and forget about wanting protective custody."  Compl. at 9 ¶ 37.

Defendants argue that plaintiff has failed to state a claim for excessive force because plaintiff's alleged injury is *de minimis* for constitutional purposes. See Dkt. No. 12-1 at 5.

Claims that prison officials applied restraints too tightly are analyzed under the Eighth Amendment as claims of excessive force. See Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted); Blyden, 186 F.3d at 262. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted). However, "the malicious use of force to cause harm[] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[] harm." Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (Observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation marks and citation omitted). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

"While handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force." Burroughs v Petrone, 138 F. Supp. 3d 182, 213 (N.D.N.Y. 2015) (internal quotation marks and citation omitted). For example, in Davidson, the plaintiff alleged that correction officers "placed . . . handcuffs and leg irons and waist chain on [him] so tight as to cut into [his] flesh[,] reduce circulation[,] and cause swelling," which left a scar on his right ankle and numbness in the area, and caused his "wrists  [to be] numb for several months afterwards." Davidson, 32 F.3d at

29.  Further, the plaintiff alleged that the defendants purposefully placed the handcuffs

and chains too tightly in retaliation for filing lawsuits, and that they refused his requests

to loosen the restraints.  See id. at 29, 30.  The Second Circuit concluded that the

plaintiff's complaint in Davidson

> plainly allege[d] both the objective and subjective
> components of a cause of action for an Eighth Amendment
> violation: the handcuffs were allegedly placed on the plaintiff
> too tightly, leading to serious and permanent physical injury
> (the objective component), and such excessive force was
> applied to the plaintiff wantonly and maliciously in retaliation
> for being a litigious inmate (the subjective component).

Id. at 30 (internal quotation marks and brackets omitted).

By contrast, courts routinely dismiss claims of excessive force based on tight

handcuffing where an inmate asserts only a de minimis injury without plausible

allegations of wantonness or maliciousness.[7]  For instance, in Burroughs v. Mitchell, the

---

[7]  As defendants observe, some relevant caselaw appears to suggest that, in order to state an Eighth Amendment excessive force claim based on tight restraints, a plaintiff must allege a permanent injury. See Dkt. No. 12-1 (citing, among other cases, Burroughs v. Petrone, 138. F. Supp. 3d 182, 213 (N.D.N.Y. 2015) ("In the absence of any facts alleging any permanent injury as a result of handcuffing, plaintiff's excessive force claims against Weeks, S. King, Melendez, and McKeown fail to state a cause of action under § 1983.")).  However, many of those cases assess excessive force claims under the Fourth Amendment. See Bourdon v. Roney, No. 9:99-CV-0769 (LEK/GLS), 2012 WL 21058177, at * 9-10 (N.D.N.Y. Mar. 6, 2003) (assessing an arrestee's Fourth Amendment excessive force claim arising out of events that occurred during the course of the plaintiff's arrest); Jackson v. City of New York, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) (same); Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468–69 (S.D.N.Y. 2008) (same); Layou v. Crews, No. 9:11-CV-0114 (LEK/RFT), 2013 WL 5494062, at *7 (N.D.N.Y. Sept. 30, 2013) (same).  It is well settled that Fourth Amendment excessive force claims are assessed under the objective reasonableness standard, which does not apply to post-conviction inmates and, unlike the Eighth Amendment standard that includes both objective and subjective elements, is an "exclusively objective analysis" under which the defendant's "intent is irrelevant."  Franks v. New Rochelle Police Dep't, No. 13-CV-636 (ER), 2015 WL 4922906, at *10 (S.D.N.Y. Aug. 18, 2015).

Further, the complaint in the Eighth Amendment excessive force case relied on by defendants, which cites to cases assessing Fourth Amendment excessive force claims, lacked allegations of wantonness, which allowed the court to bypass the subjective analysis and dismiss the Eighth Amendment excessive force claim on the objective prong alone.  See Petron, 138 F. Supp. 3d at 213 (dismissing the plaintiff's Eighth Amendment excessive force claim where the complaint was devoid of allegations of malicious force and alleged only a de minimis injury).  As discussed in section II.B.1., "[t]he appropriate test" for assessing an excessive force claim brought "under the Eighth Amendment involves both subjective and objective elements."  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). Accordingly, this Report- Recommendation & Order will apply the test articulated in Blyden.

Court dismissed a *pro se* inmate's excessive force claim where he alleged only that the defendants "handcuffed him tightly, which caused cuts to his wrist." Burroughs v. Mitchell, 325 F. Supp.3d 249, 265 (N.D.N.Y. 2018) (internal quotation marks omitted). Similarly, in Burroughs v. Petrone, the Court dismissed the *pro se* inmate's excessive force claim based on tight handcuffing where the complaint alleged, without more, that the handcuffs caused "pain, swelling, and bruising." Burroughs v. Petrone, 138 F. Supp. 3d 182, 213 (N.D.N.Y. 2015) (internal quotation marks and brackets omitted).

Further, where a *pro se* inmate's complaint alleged that overly tight handcuffing caused "pain in his wrists and pain, numbness[,] and swelling in his foot and ankle," the court concluded that the alleged injuries were "more than likely to prove *de minimis*." Warren v. Purcell, No. 03-CV-8736 (GEL), 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004). However, the court in Warren declined to determine whether such injuries were sufficiently serious for purposes of the Eighth Amendment because it concluded that the complaint failed to satisfy the subjective element, reasoning that the complaint did not "attribute[] any improper or retaliatory motive to the defendant officers, either in attaching the cuffs in . . . the first instance, or in failing to loosen them once he complained." Id.

Moreover, in Wilson v. Woodbourne Corr. Facility, the *pro se* inmate alleged only that the defendants used excessive force by applying "handcuffs . . . too tightly when escorting [him]." Wilson v. Woodbourne Corr. Facility, No. 9:11-CV-1088 (DNH/ATB), 2012 WL 1377615, at *4 (N.D.N.Y. Mar. 21, 2012), report and recommendation adopted sub nom. Wilson v. Depolo, No. 9:11-CV-1088, 2012 WL 1366590 (N.D.N.Y. Apr. 19, 2012). Noting the absence of any facts in the complaint alleging that the defendant

correction officers were aware that the restrains were causing pain or that the plaintiff requested the restraints to be loosened, the Court concluded that the "[p]laintiff's allegation, without more, . . . [wa]s clearly *de minimis*, and . . . certainly not repugnant to the conscience of mankind." Id. (internal quotation marks omitted).

Here, the undersigned finds that plaintiff has sufficiently pleaded a *per se* claim for excessive force because he has alleged facts which plausibly suggest that the force asserted was done maliciously for the purpose of causing harm. See Hudson, 503 U.S. at 9-10. Although, as defendants correctly contend, plaintiff's alleged injury resulting from the "tight" handcuffs and chain—"soreness"—is *de minimis*, Compl. at 10 ¶¶ 12, 41; see Warren, 2004 WL 1970642, at *8 (holding that temporary pain, numbness and swelling as a result of tight handcuffing was "more than likely to prove *de minimis*"); Ruggiero v Fisher, No. 15-CV-00962 (RJA/JJM), 2018 WL 7892966, at *7 (W.D.N.Y. Sept. 27, 2018), report and recommendation adopted sub nom. Ruggiero v. Fisher, No. 15-CV-962-A, 2019 WL 1438810 (W.D.N.Y. Apr. 1, 2019 (temporary discomfort resulting from tight restraints held to be *de minimis*), "[t]he absence of serious injury [while] relevant to the Eighth Amendment inquiry, . . . does not end it." Hudson, 503 U.S. at 7.

Plaintiff alleges that he asked defendants to "loosen the chains and [handcuffs] over . . . 10 times," "complain[ed] about the tightness and soreness for [six] hours," that defendants ignored his "constant pleas and cries to loosen the chains and [hand]cuffs" and tightly chained and handcuffed him in order to make him "break[] down and forget about wanting protective custody." Compl. at 6 ¶ 13, 9 ¶ 37. Based on these allegations, the undersigned finds that the complaint sufficiently pleads facts plausibly

suggesting that the use of force was malicious and done for the purpose to cause harm. See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("[T]he malicious use of force to cause harm constitutes an 'Eighth Amendment violation *per se* . . . whether or not significant injury is evident.'") (quoting Blyden, 186 F.3d at 263) (alteration omitted)). Thus, although plaintiff does not allege that he suffered any significant or permanent injury as a result of the tight handcuffs and chains, "any or even . . . no injuries resulting from the events plaintiff described could amount to a *per se* constitutional violation." Brown v. Dubois, No. 9:15-CV-1515 (LEK/CFH), 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017) (citing Baskerville v. Mulvaney, 411 F.3d 45, 48-49 (2d Cir. 2005)); Cf. Warren, 2004 WL 1970642, at *8 (officers who placed prisoner in tight restraints did not violate constitution where prisoner suffered temporary pain, numbness, and swelling, and no improper or wanton motive was alleged for the officers' actions).

Accordingly, it is recommended that defendants' motion to dismiss on this ground be denied.

### 2. Failure to Protect

Plaintiff next alleges that defendants failed to protect him in violation of his Eighth Amendment rights by placing him in a holding cell with a "violent gang member" despite his numerous requests to be placed in protective custody. Compl. at 11 ¶ 42. He further alleges that as a result of being housed with this other inmate, he was unable "to sleep for days in fear of his life" and experienced "psychological pain." Id. at 11 ¶ 43. Defendants argue that plaintiff's claim fails to state a cause of action for failure to

protect because plaintiff "does not allege that the inmate he was housed with assaulted him[] or caused any other injury whatsoever."  Dkt. No. 12-1 at 6.

"The Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates' in their custody."  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)).  "[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983."  Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).  To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) he or she was "incarcerated under conditions posing a substantial risk of serious harm" (objective prong); and (2) prison officials acted with deliberate indifference to that risk and the inmate's safety (subjective prong).  Farmer, 511 U.S. at 834.

As to the objective prong, the deprivation must be "sufficiently serious," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted)), and "contemplate[ ] 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting)).  "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker."  Gilmore v. Rivera, No. 13-CV-6955 (RWS), 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014); see Rivers v. Spinnella, No. 9:09-CV-309 (FJS/RFT), 2010 WL 6428486, at *5

(N.D.N.Y. Nov. 4, 2010) (granting the defendants' motion for summary judgment where "there [were] no specific facts, nor even allegations, that indicate the [the d]efendant was aware that [the p]laintiff faced a substantial risk of serious harm until the altercation had already started.").

As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety.  See Farmer, 511 U.S. at 837.  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." Murray v. Goord, 668 F. Supp. 2d 344, 359 (N.D.N.Y. 2009).  Negligence by a prison official is insufficient to amount to a constitutional violation.  See Hathaway, 37 F.3d at 66.

As to the objective prong, plaintiff does not allege facts plausibly suggesting that he faced a substantial risk of serious harm from his cellmate.  As urged by defendants, plaintiff does not claim that the inmate with whom he was housed on August 1, 2017, threatened or assaulted him in any way.  Rather, plaintiff alleges only that he could not sleep for some uncertain amount of time and that he experienced unspecified "psychological pain" as a result of being housed with this inmate.  Compl. at 11 ¶ 43.  Such conclusory and speculative fears certainly do not "'contemplate[] 'a condition of urgency, . . . that may produce death, degeneration, or extreme pain.'" Hathaway, 37 F.3d at 66 (quoting Nance, 912 F.2d at 607).  Further, given the absence of allegations of actual physical injury, plaintiff has failed to satisfy the objective element of the test.  See Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 267 (N.D.N.Y.

2008) ("where, as here, the plaintiff does not allege that he was assaulted or threatened by other inmates, or where plaintiff only alleges that he was in fear of an assault, a claim for failure to protect must be dismissed"); Johnson v. Lynn-Caron, No. 9:11-CV-386 (GLS/CFH), 2013 WL 5465594, *5 (N.D.N.Y. Sept. 30, 2013) (dismissing the plaintiff's failure to protect claim where the plaintiff did not demonstrate actual physical harm); Jamison v. Hayden, No. 9:03-CV9-13 (FJS/DRH), 2008 WL 907316, at *3 (N.D.N.Y. Mar. 31, 2008) (dismissing an inmate's failure to protect claim where the only injury alleged was "severe stress" in the absence of allegations of actual physical injury); Dolberry v. Levine, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008) (dismissing a failure to protect claim where the plaintiff failed to proffer evidence showing he was subjected to any physical harm); see also Garcia v. Rodriguez, No. 05-CV-5915 (JSR), 2007 WL 2456631, at *2 (S.D.N.Y. Aug. 24, 2007) (holding that even an isolated threat from one inmate to another that an inmate would "get hurt," without any other present or past violent indications between the two inmates, does not demonstrate a substantial risk of serious harm).

As to the subjective prong, plaintiff fails to contend that defendants actually knew of and disregarded an excessive risk to his safety. Although plaintiff alleges that he explained to defendants "his reason for requesting [protective custody]"—that he had a general fear of retaliation for the altercation at Clinton—the complaint is devoid of any factual allegations that he informed defendants that the particular inmate with whom he was housed at Upstate had a connection to the inmate involved in the altercation at Clinton, knew of that incident, posed any specific risk to his safety as a result thereof, or engaged in any threatening or assaultive behavior toward plaintiff. Compl. at 11 ¶ 42.

Therefore, the complaint fails to allege sufficient factual allegations that defendants could have "actually inferred from that disclosure that a substantial risk of serious harm existed" as a result of plaintiff's placement with his cellmate.  Murray, 668 F. Supp. 2d at 359.  Indeed, it is well settled that a defendant's knowledge of a plaintiff's generalized fear of harm is an insufficient basis upon which to establish a failure to protect claim. See Burns v. Martuscello, No. 9:13-CV-0486 (LEK/CFH), 2015 WL 541293, at *13 (N.D.N.Y. Feb. 10, 2015) (internal quotation marks omitted) ("Eighth Amendment failure to protect claims are not to be based on a defendant's knowledge of a general risk of harm to an inmate.") (internal quotation marks omitted); see also Hogan v. Fischer, No. 09-CV-6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct. 10, 2012) (holding the failure to protect the plaintiff against a general threat of harm is insufficient to raise a failure to protect claim under the Eighth Amendment), vacated in part on other grounds, 738 F.3d 509 (2d Cir. 2013).  Thus, the complaint does not sufficiently state a claim for failure to protect against defendants.[8]

Accordingly, it is recommended that plaintiff's failure to protect claim be dismissed.

### 3. Conditions of Confinement

---

[8]  In addition, to the extent that plaintiff also contends that defendants violated DOCCS Directive 4003B by housing him with the alleged gang member, it is well settled that "[f]ailure to follow a DOCCS Directive does not give rise to a § 1983 claim."  Alicea v. Maly, No. 9:12-CV-203 (MAD/TWD), 2015 WL 4326114, at *14 n.8 (N.D.N.Y. July 14, 2015); see Cabassa v. Gummerson, No. 9:01-CV-1039 (DNH/GHL), 2008 WL 4416411, at *6 n.24 (N.D.N.Y. Sept. 24, 2008) (violation of a DOCCS Directive does not give the plaintiff a claim under 42 U.S.C. § 1983); see also Ahlers v. Nowicki, No. 9:12-CV-0539 (DNH/RFT), 2014 WL 1056935, at *4 (N.D.N.Y. Mar.18, 2014) ("[C]laims involving the improper adherence to proprietary facility policies are incognizable under § 1983; only rights secured by the Constitution and federal law are actionable under § 1983.").

Reading plaintiff's allegations to raise the strongest arguments they suggest, the complaint alleges that defendants subjected him to unconstitutional conditions of confinement in violation of his Eighth Amendment rights by placing him in a holding cell for a maximum period of five and one-half hours, during which time he was handcuffed, denied access to a bathroom, deprived of food and water, and housed with a "violent gang member."  Compl. at 10 ¶ 40, 11 ¶ 43.  Defendants argue that the alleged conditions of plaintiff's confinement do not rise to the level of an Eighth Amendment violation.  See Dkt. No. 12-1 at 4-6.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer, 511 U.S. at 832 (internal quotation marks and citations omitted); see Blyden, 186 F.3d at 263 ("society does not expect or intend prison conditions to be comfortable, [and] only extreme deprivations" of basic human needs "are sufficient to sustain a [conditions of confinement] claim.") (internal quotation marks omitted).  As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).  Objectively, the deprivation must be "sufficiently serious [such] that [the inmate] was denied the minimal civilized measure of life's necessities."  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted).  The objective prong can be satisfied where the plaintiff pleads "conditions [that] either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health."  Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Walker, 717 F.3d at

125).  There is no "static test" to determine whether or not an alleged deprivation is sufficiently serious to satisfy the objective prong.  Id. (internal quotation marks omitted).  Rather, courts must determine whether the conditions violate "contemporary standards of decency."  Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)) (additional citation omitted).  To satisfy the subjective test, the inmate must show that "the defendant official acted with a sufficiently culpable state of mind . . . such as deliberate indifference to [the inmate's] health or safety."  Id. (internal quotation marks and citation omitted); see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).

Unconstitutional conditions of confinement have generally been found when the duration of the deprivation is sufficiently long, or when the deprivation is an ongoing condition of an inmate's confinement, rather than the result of a single, isolated incident. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of grue might be tolerable for a few days and intolerably cruel for weeks or months.") (internal quotation marks omitted); Smith v. Copeland, 87 F.3d 265, 269 (8th Cir.1996) ("[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in [an Eighth Amendment] analysis.  Conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." (citations omitted)); Walker v. Schriro, No. 11-CV-9299 (JPO), 2013 WL 1234930, at *13 (S.D.N.Y. 2013) (allegations that the plaintiff was temporarily deprived of food, shower, linens, running water or bathroom were insufficient to state a claim "[g]iven that none of the[] deprivations rose to an acute and conscience-shocking level, either alone or in combination, the relative brevity of the [p]laintiff's mistreatment precludes a finding that [the p]laintiff can satisfy the requirement of an objectively serious deprivation").

### i. Handcuffing/Denial of Bathroom Access

"Individuals in custody do not have a constitutional right to use the bathroom . . .
whenever they please." Treat v. Cent. New York Psychiatric Ctr., No. 9:12-CV-602,
2013 WL 6169746, at *2 (N.D.N.Y. Nov. 20, 2013).  It is well settled held that "[t]he
temporary deprivation of the right to use the toilet, in the absence of serious physical
harm or a serious risk of contamination, does not rise to the level of an Eighth
Amendment violation." Whitted v. Lazerson, No. 96-CV-2746 (AGS), 1998 WL 259929,
at *2 (S.D.N.Y. May 21, 1998); see Odom v. Keane, No. 95-CV-9941 (SS), 1997 WL
576088, at *4-5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (concluding that, the absence
of a working toilet in prison cell for approximately ten hours, without any allegation that
the prisoner risked contamination by contact with human waste, did not rise to the level
of cruel and unusual punishment).  In the absence of allegations of serious physical
harm or serious risk of contamination, courts have routinely rejected unconstitutional
conditions of confinement claims where plaintiffs have alleged that they experienced
pain or discomfort and were forced to relieve themselves in their clothing as a result of
waiting to use a bathroom. See Whitted, 1998 WL 259929, at *2 (finding that the inmate
failed to establish an objective injury where he was forced to wait one and a half hours
to use the bathroom, during which time he "was forced to hold his bowel movement at
painful levels, and at times partially urinated and defecated in his clothing."); Gill v
Riddick, No. 9:03-CV-1456, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005)
(concluding no Eighth Amendment violation in the absence of allegations of serious
injury to the inmate's health as a result of being forced to hold his urine for

approximately 70 minutes); Bourdon v. Roney, No. 9:99-CV-0769 (LEK/GLS), 2003 WL

21058177, at *30-31 (N.D.N.Y. Mar. 6, 2003) (observing that "[t]he standard for

analyzing a pre[-]trial detainee's [conditions of confinement] claim is the same as the

Eighth Amendment standard," and holding that the pre-trial detainee's allegations of

being deprived of bathroom privileges for a maximum of three hours while locked in a

hot police car without water "failed to adequately allege that he was denied minimal

necessities of civilized life for a substantial period of time" in violation of his

constitutional rights); see also Qawi v. Howard, No. Civ-A-98-220 (GMS), 2000 WL

1010281, at *3-4 (D.Del. July 7, 2000) (holding that the denial of the use of a bathroom

for six hours during which the inmate was forced to urinate in drinking cup and bowl and

defecate into a paper bag did not constitute sufficiently serious deprivation because the

duration of the condition was brief and the inmate suffered no significant health risk).

On the other hand, courts have, under certain circumstances, found that the

denial of bathroom access may give rise to an Eighth Amendment violation.  For

example, in Hart v. City of New York, the Court refused to dismiss an inmate's Eighth

Amendment claim where he alleged that the defendant correction officers ignored his

repeated requests to use the bathroom for 12 hours, which forced plaintiff to "repeatedly

soil himself and remain[] imprisoned in urine-soaked clothing," despite having been

informed that the plaintiff suffered from multiple sclerosis which caused the need for

frequent urination.  Hart v. City of New York, No. 11-CV-4678 (RA), 2013 WL 6139648,

at *7 (S.D.N.Y. Nov. 18, 2013).  Further, in DeBlasio v. Rock, the Court denied the

defendants' motion for summary judgment as to an inmate's Eighth Amendment claim

of unconstitutional conditions of confinement where he alleged that the defendant

correction officers handcuffed him behind his back and refused to "remove [his] handcuffs so that he could use the bathroom" for five hours, ultimately forcing the inmate to urinate and defecate on himself. DeBlasio v. Rock, No. 9:09-CV-1077 (TJM/GHL), 2011 WL 4478515, at *16 (N.D.N.Y. Sept. 26, 2011).

Here, plaintiff has not alleged any "serious physical harm or a serious risk of contamination" as a result the denial of bathroom access on August 1, 2017. Whitted, 1998 WL 259929, at *2. Rather, plaintiff contends only in conclusory terms that he requested "to use the restroom for relief." Compl. at 6 ¶ 13. The complaint does not allege that plaintiff experienced any pain or significant discomfort, that he was forced to urinate or defecate in his clothing, or that he has suffered any persisting physical injury as a result of his experience. Cf. Whitted, 1998 WL 259929, at *2. Further, unlike in Hart, plaintiff does not allege that he made defendants aware of any medical condition which would necessitate an exceptional need for bathroom access, or that this deprivation extended beyond the single, isolated incident on August 1, 2017. Cf. Hart, 2013 WL 6139648, at *7; accord Hutto, 437 U.S. at 686–87.

Moreover, although Rock involved a handcuffed inmate who was deprived bathroom access for a comparable period of time to plaintiff, that case appears distinguishable. The plaintiff in Rock specifically alleged that the defendants had applied handcuffs behind his back, which prevented him from using the bathroom in his cell for approximately five hours until he was forced to urinate and defecate on himself. See id. Here, by contrast, plaintiff asserts only that his handcuffs and chains were applied "tight" and that he requested that the handcuffs and chain be loosened but does not state any facts from which the Court can infer that his handcuffs hindered him from

relieving himself.  Cf. Rock, 2011 WL 4478515, at *16.  Thus, the present case appears

more analogous to cases in which an inmate has alleged an Eighth Amendment

violation based on temporary discomfort due to a fairly brief and isolated denial of

bathroom access without any serious physical harm or serious risk of contamination.

See Whitted, 1998 WL 259929, at *2.

Similarly, concerning the application of "tight" handcuffs and chain, the complaint

fails to allege facts demonstrating that the use of these restraints while plaintiff was

confined in his cell was sufficiently serious such that it posed "an unreasonable risk of

serious damage to [the plaintiff's] health."  Darnell, 849 F.3d at 30 (quoting Walker, 717

F.3d at 125).  As discussed in detail in part II.B.1 supra, plaintiff alleged only that he

suffered temporary "soreness" as a result of the application of the chains and handcuffs

and does not allege that he sought or required medical attention, or that he is currently

suffering any injury as a result thereof.  Compl. at 10 ¶ 41.  Such minor discomfort

cannot be said to pose an "unreasonable risk of serious damage to [the plaintiff's]

health."  Darnell, 849 F.3d at 30; see also Hudson, 503 U.S. at 9 ("routine discomfort is

part of the penalty that criminal offenders pay for their offenses against society" (internal

quotation marks and citation omitted)).  Thus, plaintiff's Eighth Amendment claim for

unconstitutional conditions of confinement insofar as premised upon the application of

tight handcuffs and temporary denial of bathroom access fails to satisfy the objective

prong of the Eighth Amendment test.  Accordingly, it is unnecessary to reach the

subjective prong because "without a constitutional violation, [d]efendants clearly could

not have acted with 'deliberate indifference.'"  Gill, 2005 WL 755745, at *16 (quoting

Odom, 1997 WL 576088, at *5).

### ii. Denial of Food and Water

Plaintiff asserts that defendants subjected him to unconstitutional conditions of confinement in violation of his Eighth Amendment rights by depriving him of food and water between 1:00 P.M. and sometime between 6:00 P.M. and 6:30 P.M. on August 1, 2017, when he arrived at Upstate.  See Compl. at 6 ¶ 20, 11 ¶ 43.  He concedes that, "[b]etween 6[:00] p.m. [and] 6:30 p.m., [he] was offered a hot tray of food, which was freezer cold."  Id. at 6 ¶ 20.  Defendants contend that plaintiff fails to state a claim because the temporary deprivation of food and water "has been routinely found insufficient to state a[n] [Eighth Amendment] conditions[]of[]confinement claim."  Dkt. No. 12-1 at 5.

The deprivation of food, as any other deprivation, must be tested by the same Eighth Amendment analysis.  In order to rise to the level of an Eighth Amendment claim, the deprivation must be sufficiently serious, and the defendant must have been deliberately indifferent to the inmate's health or safety.  See Farmer, 511 U.S. at 834.  As the Second Circuit has noted, courts have not explicitly held that the denial of food is a *per se* violation of a prisoner's Eighth Amendment rights.  See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (citing Moss v. Ward, 450 F. Supp. 591, 596 (W.D.N.Y.1978)).  However, "under certain circumstances[,] a substantial deprivation of food may well be recognized as being of constitutional dimension."  Id.  For example, depriving a prisoner of all food for four consecutive days was held to have violated the Eighth Amendment.  Moss, 450 F. Supp. at 596-97.

On the other hand, "isolated" deprivations of food do not typically rise to the level of an Eighth Amendment violation.  Reeder v. Hogan, No. 9:09-CV-520, 2012 WL 4107822, at *18 (N.D.N.Y. July 11, 2012), report and recommendation adopted 2012 WL 4106740 (N.D.N.Y. Sept. 19, 2012).  For example, allegations of intermittent deprivations for periods of approximately eight- and one-half hours, twenty-three hours, and during periods of confinement, were held insufficient to state an Eighth Amendment conditions of confinement claim.  See Little v. Mun. Corp., 51 F. Supp. 3d 473, 490 (S.D.N.Y. 2014); see also Konovalchuk v. Cerminaro, No. 9:11-CV-01344 (MAD/CFH), 2014 WL 272428, at *21 (N.D.N.Y. Jan. 24, 2014) (holding that an inmate's claim that he missed two consecutive meals while being transported to-and-from the courthouse was "not substantial and d[id] not amount to cruel and unusual punishment."); Zimmerman v. Seyfert, No. 9:03-CV-1389 (TJM), 2007 WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that requiring the plaintiff to go eleven hours without eating did not rise to the level of a constitutional claim).  Moreover, courts in this Circuit have held that being denied a single meal does not give rise to a constitutional deprivation.  See, e.g., Hankerson v. Nassau Cnty. Corr. Facility, No. 12-CV-5282 (SJF/WDW), 2012 WL 6055019, at *3 (E.D.N.Y. Dec. 4, 2012) ("[The plaintiff's] allegation that he was denied a single meal while incarcerated . . . does not give rise to a constitutional deprivation."); Scarbrough v. Evans, No. 11-CV-131 (NAM/DRH), 2012 WL 4364511, at *5 (N.D.N.Y. May 17, 2012) ("[T]he denial of a single meal is insufficient to state a claim for relief.") (citations omitted).

Here, it is undisputed that plaintiff did not receive food from 1:00 P.M. until between 6:00 P.M. and 6:30 P.M. on August 1, 2017—a deprivation which lasted, at

most, five and one-half hours.  See Compl. at 11 ¶ 43.  Thus, plaintiff's claim in this

regard fails to satisfy the objective prong of the test, as he does not allege a deprivation

of "the measure of food necessary to maintain health, but rather ha[s] described the sort

of isolated withholding[] that do[es] not typically rise to [the] level of constitutional

significance."  Reeder, 2012 WL 4107822, at *18; see Zimmerman, 2007 WL 2080517,

at *27.[9]  Further, as defendants argue, the lack of a meal over the course of five and

one-half hours is "not an atypical experience for most people over the course of an

ordinary day, let alone those . . . subjected to the more restrictive . . . conditions of a

prison setting."  Dkt. No. 12-1 at 7.  Indeed, this alleged deprivation is less significant

than deprivations of food found to be insufficient to state a claim for cruel and unusual

punishment.  See Konovalchuk, 2014 WL 272428, at *21; Zimmerman, 2007 WL

2080517, at *27.  Thus, even affording the complaint the most liberal construction

possible, plaintiff does not even assert the denial of a single meal—a legally insufficient

basis to support a constitutional claim.  See Hankerson, 2012 WL 6055019, at *3;

Scarbrough v. Evans, 2012 WL 4364511, at *5.

    Plaintiff likewise fails to allege facts sufficient to state a claim for cruel and

unusual punishment based on the temporary denial of drinking water.  Liberally

---

[9] Insofar as the complaint may be construed as alleging an Eighth Amendment violation based on the provision of "freezer cold" food, plaintiff fails to state a claim.  Compl. at 6 ¶ 20.  It is well established that "[t]he provision of cold food, is not, by itself, a violation of the Eighth Amendment as long as it is nutritionally adequate and is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  Martin v. Oey, No. 9:16-CV-00717 (TJM/TWD), 2017 WL 6614680, at *6 (N.D.N.Y. Nov. 28, 2017) (internal quotation marks and citation omitted).  Here, the complaint is devoid of allegations that the food was prepared or served under conditions presenting an immediate danger to plaintiff's health or wellbeing; therefore, the alleged provision of cold food, without more, fails to state a claim upon which relief may be granted.  See id.; see also Brooks v. NYC DOC Comm'r, No. 14-CV-6283 (RRM/CLP), 2016 WL 4530456, at *4-5 (E.D.N.Y. Aug. 29, 2016) (sua sponte dismissing cause of action based on the failure to provide hot meals where there was no allegation that the inmate did not receive nutritionally adequate meals).

construing plaintiff's claim, his deprivation of drinking water coincided with his deprivation of food.  See Compl. at 5 ¶ 12.  Therefore, as plaintiff admits that he was provided a meal sometime between 6:00 P.M. and 6:30 P.M., this claim, too, amounts only to a short, isolated deprivation and, therefore, does not arise to the level of an Eighth Amendment violation.  See Mortimer Excell v. Fischer, No. 9:08-CV-945, 2009 WL 3111711, at *5-6 (N.D.N.Y. Sept. 24, 2009) (holding that, to the extent the plaintiff alleged that he was denied water during the same 24-hour period he was denied a meal, he failed to state a constitutional claim); McGee v. Pallito, No. 10-CV-11, 2011 WL 6291954, at *13 (D.Vt. Aug. 3, 2011) ("temporary deprivations of drinking water are not unconstitutional"), report and recommendation adopted, 2011 WL 6294202 (D.Vt. 2011); see also Beckford v. Portuondo, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) ("Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers.").  Thus, plaintiff's Eighth Amendment claim premised on the denial of food and water fails to satisfy the objective element of the Eighth Amendment test.  Therefore, as plaintiff has failed to adequately plead a constitutional violation, it is unnecessary to reach the subjective prong.  See Gill, 2005 WL 755745, at *16 (quoting Odom, 1997 WL 576088, at *5).

### iii. Plaintiff's Cellmate

Liberally construed, the complaint also alleges that plaintiff was subjected to unconstitutional conditions of confinement because he was housed with a "violent gang member."  Compl. at 11 ¶ 43, 7 ¶ 22.  Plaintiff contends that, as a result of being housed with this inmate, he was unable to "sleep for days" and experienced "psychological

pain." Id. at 11 ¶43.  Defendants posit that plaintiff fails to a claim in this regard because he "does not allege that he suffered any injury or harm as a result."  Dkt. No. 12-1 at 8.

Despite plaintiff's conclusory assertion, he has failed to proffer sufficient factual allegations to establish an Eighth Amendment claim based on his placement with his cellmate at Upstate.  Iqbal, 556 U.S. at 678.  Even viewing the facts in the light most favorable to plaintiff, he does not allege how being placed in the cell with this inmate "pose[d] an unreasonable risk of serious damage to [his] health."  Darnell, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Walker, 717 F.3d at 125).  As discussed in section II.B.2. supra, the complaint does not state any factual allegations which could plausibly suggest that defendants' act of housing him with the purported gang member placed him at risk of harm.  Indeed, plaintiff does not allege that his cellmate threatened or harmed him in any way, and plaintiff has not alleged any communication between him and defendants indicating that he informed defendants that his cellmate presented any specific risk to him, or that defendants were aware of, but disregarded, any such risk.  See section II.B.2. supra.

Further, plaintiff's vague assertion that he lost sleep for an unspecified number of days as a result of being housed with this inmate fails to assert facts plausibly alleging an objectively serious injury.  See generally Phelan v. Durniak, No. 9:10-CV-666 (FJS/RFT), 2014 WL 4759937, at *10 (N.D.N.Y. Sept. 24, 2014) (holding that the plaintiff's allegations that he was unable to sleep and suffered migraines because of the noise of the other inmates' televisions and radios late at night failed to satisfy the objective element of an Eighth Amendment claim); Cf. Mena v. City of New York, No.

13-CV-2430 (RJS), 2014 WL 4652570, at *4 (S.D.N.Y. Sept. 18, 2014) (concluding that

the plaintiff plausibly alleged facts to support an inference that he was objectively

prevented from sleeping at all for approximately two and one half days from being

forced to lie on a cold, wet floor in a cell large enough for only one inmate as opposed to

the three inmates who were housed there).  Moreover, plaintiff's assertion that he

suffered psychological pain is wholly conclusory and, as discussed in section II.B.2, the

complaint contains no allegations that plaintiff ever sought therapy or other medical

treatment following the alleged placement with his cellmate.  See Iqbal, 556 U.S. at 664.

Plaintiff has, therefore, failed to state an Eighth Amendment claim against defendants

based on the alleged placement in the cell with a purported gang member.

    In sum, the complaint fails to allege "conditions [that] either alone or in

combination, pose[d] an unreasonable risk of serious damage to [the plaintiff's] health."

Darnell, 849 F.3d at 30 (quoting Walker, 717 F.3d at 125).  Accordingly, it is

recommended plaintiff's Eighth Amendment conditions of confinement claim be

dismissed.


### C. First Amendment Retaliation

    Plaintiff alleges that defendants retaliated against him by placing him in a cell

with a "violent gang member" for threatening to file grievances and a federal civil rights

lawsuit based on their denial of plaintiff's requests for protective custody, to loosen his

chains and handcuffs, food and water, and bathroom access, in violation of his First

Amendment rights.  Compl. at 9-10 ¶ 39.  The complaint may also be construed as

asserting a First Amendment retaliation claim based on C.O. King's alleged threat to file

a false misbehavior report against plaintiff.  See id. at 6 ¶¶ 17.  Defendants contend that plaintiff fails to sufficiently plead a First Amendment retaliation claim because "[p]laintiff's verbal requests for protective custody . . . do not constitute protected speech," and even if they did, "the alleged application of tight handcuffs and chains" and the temporary denial of food, water, and bathroom access does not constitute adverse action.  Dkt. No. 12-1 at 10, 11.

In order to establish a First Amendment retaliation claim under Section 1983, a prisoner must allege the following: that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action."  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citations omitted).  Because of the potential for abuse and the "ease with which claims of retaliation may be fabricated," courts must examine prisoner retaliation claims with "skepticism and particular care."  Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order) (quoting Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)).

It is well settled that the filing of administrative grievances and lawsuits constitutes protected speech.  See Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity"); Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and grievances—are clearly constitutionally protected rights") (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).  Further, courts in this Circuit have routinely found that a prisoner's threat of filing a grievance or lawsuit constitutes protected activity.  See

Flemming v. King, No. 14-CV-316 (DNH/CFH), 2016 WL 5219995, at *4 (N.D.N.Y. June 20, 2016) (concluding that inmate's threat to file lawsuit sufficient to establish protected activity), report and recommendation adopted, No. 9:14-CV-0316 (DNH/DEP), 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016); Gibson v. Fischer, No. 9:10-CV-0968 (LEK/TWD), 2014 WL 7178346, at *15 (N.D.N.Y. Dec. 15, 2014) (denying summary judgment as to retaliation claim where the plaintiff threatened to file a grievance); Sprau v. Coughlin, 997 F. Supp. 390, 393 (W.D.N.Y. 1998) (finding a prisoner's threat to file a complaint sufficient to establish protected activity).  Here, plaintiff's threat to file grievances and a lawsuit constitutes protected activity; therefore, the complaint satisfies the first prong of the First Amendment retaliation test.  See Flemming, 2016 WL 5219995, at *4; Gibson, 2014 WL 7178346, at *15; Sprau v. Coughlin, 997 F. Supp. at 393.

To adequately plead an "adverse action," a plaintiff must allege that he was subject to "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Gill, 389 F.3d at 381 (internal quotation marks and citations omitted).  Courts in this Circuit have found that a prison official defendant's "refusal of protective custody" can be an "adverse action" for the purposes of a First Amendment retaliation claim because it could cause a prisoner to "fear[] for his safety."  Cruz v. Grosso, No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *7 (N.D.N.Y. May 23, 2014); see also Cruz v. Lee, No. 14-CV-4870 (NSR/JCM), 2016 WL 1060330, at *7 (S.D.N.Y. Mar. 15, 2016) ("[p]laintiff alleges that [the d]efendants' denial of protective custody . . . constitutes an adverse action because [the p]laintiff feared for his safety without custodial protection.  It cannot be said, as a matter of law,

that this fear would not deter a similarly situated individual from filing further lawsuits or

grievances.  Therefore, [the p]laintiff has sufficiently alleged an adverse action.").

Here, plaintiff alleges that he requested protective custody out of fear that a gang

member would retaliate against him for his altercation at Clinton and that defendants

denied his request.  See Compl. at 5 ¶ 8.  Thus, accepting plaintiff's allegations as true,

defendants' denial of protective custody could be considered adverse action.  See Lee,

2016 WL 1060330, at *6; Grosso, 2014 WL 2176256, at *6.

As for the third element,

> "[p]roof of causal connection can be established indirectly by
> showing that the protected activity was followed closely by
> discriminatory treatment . . . or through other evidence such
> as disparate treatment of fellow employees who engaged in
> similar conduct, or directly through evidence of retaliatory
> animus directed against a plaintiff by the defendant."

DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 116 (2d Cir. 1987) (internal

citations omitted).  With regard to temporal proximity, the Second Circuit "has not drawn

a bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship between the exercise of a federal

constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Coop.

Extension, 252 F.3d 545, 554 (2d Cir. 2001).

However, as the Second Circuit explained:

> [P]risoner retaliation claims are easily fabricated, and . . .
> pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  Accordingly, while
> we have held that temporal proximity between protected
> conduct and an adverse action constitutes circumstantial
> evidence of retaliation, we have consistently required some
> further evidence of retaliatory animus before permitting a
> prisoner to proceed to trial on a retaliation claim.

Faulk v. Fisher, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order) (internal citations and quotation marks omitted).  For example, in Lee, the court concluded that an inmate sufficiently established a causal connection where he alleged facts demonstrating a "close temporal proximity" between the protected activity of filing a lawsuit and the adverse action of defendants denying his requests for protective custody "taken together with [the d]efendants' knowledge of the protected activity and statements tending to demonstrate a retaliatory motive."  Lee, 2016 WL 1060330, at *7.  Similarly, in Grosso, the inmate alleged that he informed the defendant of his pending lawsuit the same day that the defendant refused him protective custody status and that the defendant stated the reason for denying protective custody was because the inmate was "go[ing] against [prison] [a]dministration."  Grosso, 2014 WL 2176256, at *7. Observing the temporal proximity of the protected activity and adverse action, and noting that the defendant's statement "plausibly suggest[ed] a reason for the refusal of protective custody [that] related to retaliation," the Court concluded that the inmate established the causation prong for a First Amendment retaliation claim.  Id.

Here, although close in temporal proximity, as the complaint makes clear, the adverse action of denying plaintiff's request for protective custody occurred prior to plaintiff threatening to file grievances and lawsuits, and well before plaintiff actually filed his two grievances or the present lawsuit.  See Compl. at 6 ¶¶ 15, 20.  Therefore, as the alleged adverse action preceded plaintiff's threat to file grievances and a lawsuit, plaintiff cannot show that defendants' denial of protective custody was motivated by this conduct.  See, e.g., Gustafson v. Vill. of Fairport, 106 F. Supp. 3d 340, 353 (W.D.N.Y. 2015) (holding that the plaintiff failed to establish a causal link to support his First

Amendment retaliation claim where the alleged adverse action of defendant police officers beating him preceded his constitutionally-protected expression of requesting an attorney).

Additionally, insofar plaintiff's claim can be read to allege that defendants retaliated against him in violation of his First Amendment rights based on his repeated requests for protective custody, the complaint fails to state a claim because such requests do not appear to be constitutionally-protected speech.  Rather, plaintiff's request for protective custody, in effect, constitutes a request for transfer to housing of his preference, which is not constitutionally protected speech.  See Barrow v. Buren, No. 9:12-CV-01268 (MAD/CFH), 2015 WL 417084, at *13 (N.D.N.Y. Jan. 30, 2015) (concluding that an inmate's transfer requests were not constitutionally-protected speech); see generally McMahon v. Fischer, 446 F. App'x 354, 357 (2d Cir. 2011) (summary order) ("A prisoner has no right to housing in a particular facility").  Plaintiff's position would yield absurd results, as every denial of an oral request for protective custody status would give rise to a First Amendment retaliation claim.  Therefore, the undersigned finds that the complaint fails to satisfy the first element for a First Amendment retaliation claim in this regard.

Moreover, to the extent that the complaint may be read as alleging that defendants retaliated against plaintiff for stating his intention to file grievances and lawsuits based on C.O. King's purported threat to file a false misbehavior report, even assuming arguendo that plaintiff's stated intention could be considered constitutionally-protected speech, plaintiff fails to state a First Amendment retaliation claim.  See Compl. at 6 ¶ 16, 17.  As articulated in the complaint, C.O. King informed plaintiff that

he had been instructed to file a misbehavior report and that "the Sgt. want[ed] to write [him] a ticket" based on plaintiff's refusal to follow a direct order to lock into a cell shortly after stating that he would file grievances and lawsuits.  See Compl. at 6 ¶¶ 17, 19. Plaintiff denies that he refused to follow a direct order from defendants.  See id. at 6 ¶¶ 18.  Therefore, liberally construing the complaint, plaintiff appears to allege that C.O. King threatened to file a false misbehavior report.

As an initial matter, plaintiff does not allege that C.O. King actually wrote a misbehavior report, and no misbehavior report is contained in plaintiff's submissions; rather, plaintiff merely asserts that C.O. King threatened write a misbehavior report.  In any event, it is well settled that a correction officer's filing of a false misbehavior report to prevent an inmate from seeking redress does not rise to the level of a constitutional violation in the absence of evidence that the filing of the false report actually hindered or prevented the inmate from exercising his constitutional right to seek redress through either the prison grievance procedure or by filing a lawsuit.  See Nelson v. Michalko, 35 F. Supp. 2d 289, 294 (W.D.N.Y. 1999); Husbands v. McClellan, 957 F. Supp. 403, 407 (W.D.N.Y. 1997).  Here, plaintiff does not allege that C.O. King's purported threat to file a false misbehavior report in any way hindered or prevented him from exercising his First Amendment right to file grievances and lawsuits.  Indeed, it is undisputed that plaintiff, in fact, did file two grievances and this lawsuit subsequent to C.O. King's purported threat.  Accordingly, based on the foregoing, it is recommended that plaintiff's First Amendment retaliation claim be dismissed in its entirety and that defendants' motion be granted on this ground.

**D. Conspiracy**

Plaintiff alleges that defendants "entered into an agreement that if [he] continue[d] to request protective custody status, and make their job extensive by filing extra paperwork[,] they . . . [would] . . . keep [him] locked in a holding cell, chained and tightly cuffed, without food, water or use of the bathroom, until [he] br[oke] down and forg[ot] about wanting protective custody." Compl. at 9 ¶ 37. Defendants argue that plaintiff's conspiracy claim must be dismissed because the underlying claims upon which it is based fail to state a claim for relief. See Dkt. No. 12-1 at 10.

In order to support a claim for conspiracy pursuant to § 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). "An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient." McRae v. Fischer, No. 9:17-CV-0146 (BKS/CFH), 2018 WL 3432743, at *6 (N.D.N.Y. June 6, 2018), report and recommendation adopted, No. 9:17-CV-00146 (BKS/CFH), 2018 WL 3432700 (N.D.N.Y. July 16, 2018). Although exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. See Ciambriello, 292 F.3d at 325.

Here, even construing the facts in the light most favorable to plaintiff, plaintiff has failed to advance anything more than conclusory allegations of a conspiracy. There are

no allegations outlining with specificity when, why, or how an alleged conspiracy occurred or the existence of an explicit or implicit agreement between any or all of the defendants.  Even though exacting specifics are unnecessary at the pleading stage, the complaint is devoid of factual allegations establishing that defendants had any meeting of the minds in which they contemplated "break[ing] plaintiff down" until he "forgot about wanting protective custody status."  Compl. at 9 ¶ 37; see Anilao, 774 F. Supp. 2d at 512-13.  Rather, plaintiff merely alleges, in conclusory fashion, that defendants "entered into an agreement" to do so.  Compl. at 9 ¶ 37.  Likewise, plaintiff conclusorily alleges that defendants wanted to curtail him from requesting protective custody status in order to avoid "filing extra paperwork," but fails to offer any indication as to when, where, or how defendants agreed to execute the purported conspiracy.  Compl. at 9 ¶ 37.  Beyond stating that C.O. King informed plaintiff that Sgt. Hoffnagle wanted to write him a misbehavior report for failing to follow a direct order to lock into a cell, which plaintiff does not allege was ever filed, the complaint fails to plead a "meeting of the minds between any of the[] [d]efendants to act in concert to inflict a constitutional injury on [p]laintiff."  Cusamano, 604 F. Supp. 2d at 432.

In any event, although not addressed by the parties, plaintiff's claim also fails as it is likely barred by intracorporate conspiracy doctrine.  The intracorporate conspiracy doctrine provides that officers, employees, and agents of a single corporate entity are legally incapable of conspiring together.  See Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008).  Although the Second Circuit has recognized that the doctrine applies in the Section 1985 context, see id., it has not passed directly on the doctrine's applicability in the Section 1983 context.  However, district courts within the Circuit have applied the

doctrine to such claims.  See Vega v. Artus, 610 F. Supp. 2d 185, 205-06 (N.D.N.Y. 2009) (dismissing conspiracy claim pursuant to intracorporate conspiracy doctrine where all of the defendants were DOCCS employees acting within the scope of their employment); see also Williams v. Korines, No. 9:16-CV-1157 (FJS/TWD), 2018 WL 4521204, at *5 n.1 (N.D.N.Y. Sept. 21, 2018) (concluding that the intracorporate conspiracy doctrine applied to an inmate's Section 1983 conspiracy claim); Richard v. Dignean, 126 F. Supp. 3d 334, 338-39 (W.D.N.Y. 2015) (finding intracorporate conspiracy doctrine applicable to claim by inmate against prison officials for discrimination against him based on race and religion); Toliver v. Fischer, No. 9:12-CV-00077 (MAD/ATB), 2015 WL 403133, at *22 (N.D.N.Y. Jan. 29, 2015) (dismissing conspiracy claim by inmate against DOCCS personnel under the intracorporate conspiracy doctrine).

An exception to the intracorporate conspiracy doctrine applies when the individuals are "pursuing personal interests wholly separate and apart from the entity." Ali v. Connick, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted).  However, a plaintiff must show more "than simply alleging that the defendants were motivated by personal bias against the plaintiff."  Medina v. Hunt, No. 9:05-CV-1460 (DNH), 2008 WL 4426748, at *8 (N.D.N.Y. Sept. 25, 2008); see also Vega, 610 F. Supp. 2d at 205 (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff.").

Here, all defendants were DOCCS employees during the period set forth in the Complaint and all were acting within the scope of their employment. Therefore, the intracorporate conspiracy doctrine applies. See Vega, 610 F. Supp. 2d at 205-06. Additionally, plaintiff has not alleged facts to plausibly suggest that the exception to the intracorporate conspiracy doctrine applies. Plaintiff's conclusory allegation that defendants conspired to violate his constitutional rights in retaliation for his repeated requests for protective custody, which would have "ma[de] their job extensive by" creating "extra paperwork" for them to file, Compl. at 9 ¶ 37, does not appear to establish that defendants acted out of personal interests wholly separate and apart from Upstate. See, e.g., Richard v. Leclaire, No. 9:15-CV-00006 (BKS/TWD), 2017 WL 9511181, at *13, (N.D.N.Y. July 10, 2017) (concluding that the pro se inmate failed to allege facts to establish the personal interest exception to the intracorporation conspiracy doctrine where he alleged that the defendants conspired to file a false misbehavior report and rig a disciplinary hearing so that he would be found guilty in retaliation for being found not guilty in a prior prison disciplinary proceeding). Indeed, the Complaint specifically alleges that, "[a]t all relevant times[,] defendants acted under color of law," Compl. at 5 ¶ 6, which contradicts any claim that defendants acted out of personal interest wholly distinct from those of Upstate. See Dowd v. DeMarco, 314 F. Supp. 3d 576, 588 (S.D.N.Y. 2018) (holding that the personal interest exception to the intracorporation conspiracy doctrine did not apply where the inmate's complaint alleged that the defendant correction officers' purported acts "were conducted within the scope of their official duties or employment." (internal quotation marks omitted)). Rather, plaintiff appears to allege that defendants acted out of personal bias against him, which

is insufficient to defeat the application of the intracorporate conspiracy doctrine.  See generally Medina, 2008 WL 4426748, at *8.

Accordingly, it is recommended that plaintiff's conspiracy claim be dismissed.


### E. Supervisory Liability

Plaintiff alleges that, after he informed Sgt. Hoffnagle that he desired to be placed on protective custody status, Sgt. Hoffnagle "sent his subordinates[,]" C.O. King and C.O. Hollenbeck, to "dissuade [him from] checking into [protective custody] by threatening to issue a misbehavior report," after which the alleged First and Eighth Amendment violations occurred.  Compl. at 12 ¶ 45.  Defendants argue that plaintiff's supervisory claims against Sgt. Hoffnagle must be dismissed because the underlying First and Eighth Amendment claims upon which they are based fail to state claims upon which relief can be granted.  See Dkt. No. 12-1 at 8-9.

Supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  In this Circuit, the "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)).  However, supervisory personnel may be considered personally involved in their subordinate's conduct if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

>    (3) the defendant created a policy or custom under which
>    unconstitutional practices occurred, or allowed the
>    continuance of such a policy or custom;
>
>    (4) the defendant was grossly negligent in supervising
>    subordinates who committed the wrongful acts; or
>
>    (5) the defendant exhibited deliberate indifference to the
>    rights of inmates by failing to act on information indicating
>    that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright, 21 F.3d at 501

(additional citation omitted)).[10]  Absent a subordinate's underlying constitutional

violation, there can be no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145

(2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y.

2011) (collecting cases for the proposition that "because [p]laintiff has not established

any underlying constitutional violation, she cannot state a claim for 1983 supervisory

liability.").

      Construing the complaint liberally, plaintiff appears to allege supervisory liability

under Colon factor one.  See Colon, 58 F.3d at 873.  As discussed in section II.B.1

supra, plaintiff has plausibly asserted a claim for excessive force.  Therefore, it is

recommended that defendants' motion to dismiss plaintiff's supervisory liability claim

against Sgt. Haffnagle, insofar as it is based upon his excessive force claim, be denied.

However, as discussed in sections II.B.2.-D supra, plaintiff has failed to adequately

allege the remainder of his constitutional claims and, therefore, cannot state a claim for

---

[10]  Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five
Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of
Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (recognizing that several District Courts in the Second
Circuit have debated Iqbal's impact on the five Colon factors), rev'd in part on other grounds sub nom.,
Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order); Kleehammer v. Monroe Cnty., 743 F.
Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories
pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing
that Iqbal eliminated Colon's personal involvement standard).

§ 1983 supervisory liability based upon those allegations.  See Elek, 815 F. Supp. 2d at 808.

Accordingly, it is recommended that defendants' motion be granted as to plaintiff's supervisory liability claim against Sgt. Hoffnagle insofar as it is based upon plaintiff's Eighth Amendment failure to protect and conditions of confinement claims and First Amendment retaliation claim.  It is further recommended that defendants' motion to dismiss plaintiff's supervisory claim be denied insofar as it is based upon plaintiff's Eighth Amendment excessive force claim.

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion to Dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 12) be **GRANTED IN PART** and the following of plaintiff's claims be **DISMISSED WITH PREJUDICE**:

(1)  Eighth Amendment failure to protect claim;

(2)  Eighth Amendment conditions of confinement claim;

(3)  Conspiracy claim; and

(4)  First Amendment retaliation claim;

(5)  Supervisory claim against Sgt. Hoffnagle insofar as that claim is based upon plaintiff's Eighth Amendment failure to protect, conditions of confinement, and conspiracy claims, and First Amendment retaliation claim, and it is further

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 12) be **DENIED** as to plaintiff's:

(1)  Eighth Amendment excessive force claim;

(2)  Supervisory claim against Sgt. Hoffnagle insofar as that claim is based upon

plaintiff's Eighth Amendment excessive force claim; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-

Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P.

6(a), 6(e), 72.[11]


Dated: November 8, 2019
Albany, New York


*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[11]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).