**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RICHARD H. LIVINGSTON,

Plaintiff,

v.

WILLIAM HOFFNAGLE, et al.,

Defendants.

No. 9:19-CV-0353 (GLS/CFH)

---

**APPEARANCES:** **OF COUNSEL:**

Richard H. Livingston
326 N. Beech Street
Syracuse, New York 13207
Plaintiff pro se

Attorney General for the State of New York
The Capitol
Albany, New York 12224
Attorneys for defendants

CHRISTOPHER J. HUMMEL, ESQ.[1]
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION & ORDER**[2]

Plaintiff pro se Robert H. Livingston ("Plaintiff"), who was at all relevant times an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] The undersigned is not related to counsel for defendants.

[2] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

the defendants Correctional Sergeant ("Sgt.") William Hoffnagle, Correction Officer ("C.O.") Dustin Hollenback, and C.O. Chris King — who at all relevant times were employed at Upstate Correctional Facility ("Upstate") — violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl.").

Presently pending before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 30. Plaintiff opposed the motion. See Dkt. No. 35. For the following reasons, it is recommended that defendants' motion for summary judgment be granted.

## I. Facts[3]

In support of their motion,[4] defendants filed a Statement of Material Facts with citations to exhibits that are appended to their motion. See Dkt. No. 30-4. Defendants' exhibits included a copy of the logbook for August 1, 2017, from the building in which

[3] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> > Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
> > ....
> > The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. . . .

N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original).

[4] The Court's citation to the parties' submissions is to the pagination generated by the Court's electronic filing system, located at the header of each page, not to the pagination of the individual documents.

the alleged incident occurred and excerpts from plaintiff's deposition transcript ("Livingston Deposition"). See Dkt. No. 30-5 at 4-6; 8-111. Plaintiff filed a response to defendants' Statement of Material Facts, admitting certain facts in some paragraphs and disputing others. See Dkt. No. 35 at 10-12. Plaintiff also filed a Statement of Material Facts. See id. at 7-9.

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See section II.A. infra. On August 1, 2017, plaintiff was transferred from Clinton Correctional Facility ("Clinton") to Upstate, where he was to be housed in solitary confinement as a result of his involvement in an altercation at Clinton. See Compl. at 5 ¶ 8; Dkt. No. 1-1 at 2. Plaintiff was in restraints, including handcuffs, waist chain, and shackles during transport. See Livingston Deposition at 31 ¶ 9. Upon his arrival at Upstate, plaintiff was processed in the draft area. See id. at 35 ¶ 6. Unknown C.O.s stationed in the draft area removed plaintiff's restraints, performed a strip search, and thereafter reapplied his handcuffs and waist chain. See id. at 37 ¶ 2. Plaintiff states that the C.O. that reapplied the handcuffs "put them on a little bit more tight" than they had been applied previously, resulting in the handcuffs being "a little bit uncomfortable." Id. at 37 ¶¶ 12, 21. Plaintiff states that the C.O. in the draft area who applied his restraints did not apply the safety, which prevents the handcuffs from tightening once in place. See Livingston Deposition at 48 ¶ 7. The parties agree that a non-party, unnamed C.O. escorted plaintiff from the draft area to a holding cell. See Dkt. Nos. 30-4 at 3 ¶ 12, 35 at 10 ¶ 12.

Plaintiff requested that defendant Sgt. Hoffnagle, the area supervisor, place him in protective custody because "he was in fear for his life his safety" as a result of the

altercation at Clinton, which he characterized as a "gang attack." Compl. at 5 ¶ 8. Plaintiff states that he "had gotten the best of" the gang member, and this became widely known. See id. Plaintiff worried that gang members at Upstate would retaliate. See id. Plaintiff alleges that Sgt. Hoffnagle did not immediately respond to his request for protective custody but directed his subordinates, defendants C.O. King and C.O. Hollenbeck, "to dissuade" plaintiff from pursuing his request. See Livingston Deposition at 46 ¶ 2; Compl. at 12 ¶ 45.

Plaintiff was kept in the holding cell, "chained and handcuffed tightly," between 1:00 P.M. and 6:00 P.M.[5] Compl. at 9 ¶ 39, 5 ¶ 12. Plaintiff asked defendants "over 10 times" to loosen his handcuffs but defendants ignored his requests. Id. at 6 ¶ 13. Between 5:30 P.M. and 6:30 P.M., plaintiff "threaten[ed] to file grievances and lawsuits" against defendants based on "constitutional violations." Id. at 6 ¶ 15. In response, C.O. King told plaintiff that "the Sgt. wants to write [plaintiff] a ticket," and that "he was instructed to write plaintiff a misbehavior report" based on plaintiff's "refusing a direct order to lock into a cell." Id. at 6 ¶17. Plaintiff denies receiving the direct order but states the threat of a misbehavior report "negatively influenced [him] to voluntarily go to the populated cell." Dkt. No. 35 at 4. Sometime between 6:00 P.M. and 6:30 P.M., plaintiff was transferred from the holding cell to a housing cell. See id. at 6 ¶ 20. Once

[5] Plaintiff's Statement of Material Facts presents a timeline that differs from defendants' logbook. See Dkt. Nos. 35 at 7; 30-5 at 4-6. Specifically, plaintiff asserts he arrived at the holding cell earlier and remained there longer than is documented in the logbook. Id; Dkt. No. 30-5 at 50 ¶ 9, 65 ¶ 15. When deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court must draw all inferences and resolve ambiguities in favor of the non-moving party. See Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003). For purposes of this motion, the Court will rely on plaintiff's asserted timeline of relevant events. However, the differing timelines are immaterial to the instant motion as none of defendants' arguments rely on their asserted timeline, and the duration of plaintiff's time in the holding cell is not determinative.

plaintiff was in the housing cell, his restraints were removed. See Dkt. No. 30-5 at 69 ¶ 6.

From the time handcuffs were applied in the draft area until their removal in his housing cell, approximately 12:00 P.M. to 6:30 P.M., defendants refused plaintiff's repeated requests to loosen his handcuffs. See Livingston Deposition at 71 ¶ 7. The handcuffs became gradually tighter because the safety was not in place. See id. The handcuffs caused wrist pain lasting two days, impressions in his skin lasting about a week, and "everlasting" psychological pain. Id. at 73 ¶ 7.

## II. Legal Standards

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the court with "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. See Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law, and a "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson at 248, 250; see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)). Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not

> suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

## III. Analysis[6]

### A. Eighth Amendment

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

#### 1. Excessive Force

Plaintiff alleges that defendants used excessive force against him in violation of his Eighth Amendment rights by failing to loosen his handcuffs. See Compl. at 10 ¶ 41. He contends that he "asked over 10 times" for his handcuffs to be loosened and

---

[6] Unless otherwise noted, copies of unpublished decisions cited by the Court within this Report-Recommendation & Order have been provided to plaintiff.

"continued to complain about the tightness and soreness for [six] hours.". See id. at 6 ¶ 14. Plaintiff alleges that the handcuffs were kept on to cause him to "break[] down and forget about wanting protective custody." Id. at 9 ¶ 37. The handcuffs caused him wrist pain lasting two days, impressions in his skin lasting about a week, and "everlasting" psychological pain. Livingston Deposition at 73 ¶ 7.

Claims that prison officials applied restraints too tightly are analyzed under the Eighth Amendment as claims of excessive force. See Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element is "responsive to contemporary standards of decency" and requires showing that "the injury actually inflicted is serious enough to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); see Blyden, 186 F.3d at 262. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (internal quotation marks, alteration, and citation omitted). However, "the malicious use of force to cause harm[] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Id. at 7.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Thus, the key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[] harm." Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases - "not whether a certain quantum of injury was sustained.") (quoting Hudson, 503 U.S. at 7 (additional citation omitted)). The Second Circuit has identified five factors for a court to consider when assessing whether a defendant acted maliciously or wantonly:

> The extent of the injury and the mental state of the defendant[;] . . . the need for the application of the force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Defendants argue that summary judgment is warranted because they were not personally involved in any constitutional violation. See Dkt. No. 30-6 at 8. More specifically, defendants assert that (1) they did not directly participate in a use of excessive force; and (2) no question of material fact exists that could support liability on a failure-to-intervene theory. See id. Defendants alternatively argue that they are entitled to qualified immunity. See id.

**a. Personal Involvement**

Defendants assert they were not personally involved in any use of force against plaintiff because none of the named defendants applied plaintiff's restraints. See Dkt. No. 30-6 at 8. "It is well settled in this Circuit that 'personal involvement defendants in alleged constitutional depravations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "[i]n order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation and that particular defendant." Green v. Walsh, No. 9:05-CV-00327 (TJM/DEP), 2008 WL 4517975, at *5 (N.D.N.Y. Sept. 29, 2008). When the alleged constitutional violation is excessive force, "an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even when he had the opportunity to so." Jordan v. Fischer, 773 F.Supp. 2d 255, 274 (N.D.N.Y. 2010).

The Second Circuit defines direct participation in a constitutional violation as "personal participation by one who has knowledge of the facts that rendered the conduct illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). When the alleged violation is excessive force, "[t]he use of force is always an affirmative act and never passive indifference." Blyden, 186 F.2d at 263. In cases where, as here, a plaintiff alleges excessive force using overly-tight handcuffs, this Court and at least one other in this Circuit, have found direct participation only for officers who personally applied the handcuffs. See Wierzbic v. Howard, 331 F.R.D. 32, 60 n.9 (W.D.N.Y. 2019)

("Accordingly, [the defendant] was not involved in applying the handcuffs . . . such that no excessive force claim based on this application of handcuffs to [the plaintiff] lies against [the defendant] in the absence of his personal involvement . . . ."); see also Hamilton v. Robinson, No. 6:12-CV-06449 (MAT), 2018 WL 4334769, at *7 (W.D.N.Y. Sept. 11, 2018) ("Because [the defendant] was not the individual who actually applied the allegedly too-tight handcuffs, the specific claim against him is more in the nature of a failure to protect claim."[7]); see also Allah v. Hilton, 9:13-CV-0826 (FJS/TWD), 2016 WL 11265991, at *13, (N.D.N.Y. May 9, 2016), report and recommendation adopted 2017 WL 1194502 (N.D.N.Y. Mar. 31, 2017) (granting summary judgment for the defendants where the plaintiff "does not allege that [the defendants] applied restraints").

Here, the parties agree that defendants did not apply the restraints that led to plaintiff's alleged injury. See Dkt No. 30-4 at 2 ¶ 11; Dkt. No. 35 at 10 ¶ 11; Livingston Deposition at 37 ¶ 14. Parties further agree that defendants were not present at the time the restraints were applied. See id. Plaintiff states that the restraints were not adjusted from the time they were applied to the time they were removed in plaintiff's housing cell. See id. at 71 ¶¶ 7, 17. Construing all facts in the light most favorable to the plaintiff, no question of material fact exists as to whether defendants directly participated in an excessive use of force against plaintiff. As defendants' refusal to loosen plaintiff's handcuffs demonstrate at most "passive indifference," the claims against defendants fail to amount to an excessive use of force in violation of the Eighth Amendment. Blyden, 186 F.2d at 263. The non-party C.O.'s application of restraints in the draft area is the only affirmative act of excessive force plaintiff alleges. See

[7] Plaintiff filed a failure to protect claim in connection with this alleged incident, but this claim was dismissed pursuant to Fed. R. Civ. P. 12(b)(6). See Dkt. No. 16 at 12.

Livingston Deposition at 37 ¶ 15, 71 ¶¶ 7, 17; see also Compl. Defendants' actions in refusing to loosen the handcuffs that another, non-party C.O. applied, do not constitute "personal participation by one who has knowledge of the facts that rendered the conduct illegal." Provost, 262 F.3d at 155. Thus, it is recommended that the defendants' motion for summary judgment be granted with respect to plaintiff's Eighth Amendment claims of excessive force for failure to demonstrate defendants' personal involvement.

**2. Failure to Intervene**

Absent direct participation in an act of excessive force, defendants may still be held liable for constitutional violations under a failure-to-intervene theory. See Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). "The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dept. of Corrs., 84 F.3d 613, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)); see also Lewis v. Mollette, 752 F. Supp. 2d 233, 244 (N.D.N.Y 2010). A law enforcement official, including a prison official, has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 341 (N.D.N.Y. 2010). A defendant may be liable under a failure-to-intervene theory if: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does

not take reasonable steps to intervene."  Id. at 342 (quoting Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

It is well settled that, "[a]n underlying constitutional violation is a precondition of a failure-to-intervene claim."  Hicks v. Craw, 405 F. Supp. 3d 374, 385 (N.D.N.Y. 2019) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)).  "Where the record does not disclose an underlying excessive force violation, . . . summary judgment on a duty to intercede claim is appropriate."  Usavage v. Port Authority, 932 F. Supp .2d 575, 600 (S.D.N.Y. 2013) (internal citations omitted); see also Rolkiewicz v. City of New York, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) ("Where, as here, the Court has concluded already that the predicate claim, excessive force, cannot survive summary judgment, summary judgment is appropriate on the dependent failure to intervene claim as well.") (internal citations omitted).

Defendants argue that summary judgment is warranted with respect to the failure-to-intervene claims because plaintiff fails to allege an underlying constitutional violation.  See Dkt. No. 30-6 at 8, 10.  Since "[a]n underlying constitutional violation is a precondition of a failure-to-intervene claim," Hicks, 405 F. Supp. 3d at 385, before reaching plaintiff's failure-to-intervene claim against defendants, the Court must first assess whether plaintiff has demonstrated an underlying constitutional violation. Defendants argue that plaintiff fails to prove both objective and subjective elements of an excessive force claim. See Dkt. No. 30-6 at 8, 10; See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  They assert that plaintiff cannot demonstrate the subjective element of an Eighth Amendment excessive force claim because "[p]laintiff cannot demonstrate that the officer who applied the handcuffs acted maliciously and

sadistically to cause harm." Dkt. No. 30-6 at 12. Defendants next argue that, because a failure-to-intervene claim requires an underlying constitutional violation, plaintiff's failure to demonstrate that the non-party C.O. engaged in excessive force in violation of the Eighth Amendment precludes his failure-to-intervene claims against defendants. See id. at 13.

The subjective element of an excessive force claim requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citations omitted). Plaintiff alleges that defendants acted maliciously or wantonly in refusing to loosen his handcuffs, but does not contend that the non-party C.O. who applied his handcuffs acted maliciously or wantonly. See Livingston Deposition at 45 ¶ 17, 46 ¶ 9, 54 ¶ 8, 59. As noted, to establish liability for excessive force on a failure-to-intervene theory, "a plaintiff must prove the use of excessive force by someone other than the [defendant in question]. . . ." Cicio v. Lamora, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010). The parties do not dispute that a non-party C.O., rather than defendants, applied the restraints and further agree that defendants did not adjust plaintiff's restraints at any time before they were removed in his housing cell. See id. at 37 ¶ 15; 71 ¶¶ 7, 17.

Plaintiff has not named the non-party C.O. as a defendant nor attempted to plead excessive force claims against him. See generally Compl. Even if plaintiff had contended that the non-party C.O. used excessive force, no reasonable fact-finder could conclude that the non-party C.O.'s mental state was malicious or wanton when he applied the restraints based on the record before the Court. The Supreme Court of the

United States has identified "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[] harm" as the key inquiry into an Eighth Amendment excessive force claim. Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted). "With respect to an allegation of overly-tight handcuffs, a [c]ourt is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Russo v. County of Warren, No. 1:12-CV-1616 (FJS/CFH), 2015 WL 7738043, at *5 (N.D.N.Y. Dec. 1, 2015) (citing Finley v. Perry, No. 9:06-CV-1524 (FJS/ATB), 2010 WL 6427496, at *7 (N.D.N.Y. July 13, 2010), report and recommendation adopted, 2011 WL 1302248 (N.D.N.Y. Mar. 31, 2011)).

Plaintiff testified that the non-party C.O. applied the handcuffs "a little bit more tight" than they had previously been and that the handcuffs were "a little bit uncomfortable." Livingston Deposition at 37 ¶¶ 12, 21. Plaintiff contends that the handcuffs became tight overtime because the non-party C.O. neglected to apply the safety. Plaintiff does not allege that the non-party C.O. intentionally failed to engage the safety.[8] Thus, with respect to the non-party C.O.'s involvement, plaintiff fails to sufficiently plead that the handcuffs were "unreasonably tight" at the time of their application or while in the non-party C.O.'s custody. As to "ignoring pleas," plaintiff states that when he informed the non-party C.O. that his restraints were tight, the non-party C.O. responded that plaintiff was "only going to going from one area to the other,

[8] Insofar as plaintiff notes that the non-party C.O. failed to apply the safety, plaintiff does not suggest that the failure was intentional; thus, such conduct amounts to inattention or negligence, which is not a constitutional violation. See generally Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991) (holding that proof of negligence does not give rise to a constitutional violation).

which takes about seven minutes, tops," id. at 38 ¶ 11, suggesting that the non-party C.O. believed that plaintiff's handcuffs would soon be removed. Plaintiff does not allege that he informed the non-party C.O. that the handcuffs were "unreasonably tight"; indeed, in his own language, the handcuffs were applied "a little bit more tight" than they had been before and were "a little bit uncomfortable." Livingston Deposition at 37 ¶¶ 12, 21. Even construed in the light most favorable to plaintiff, a reasonable fact-finder could not find that the non-party C.O. acted "maliciously and sadistically [to] cause[] harm"[9] when applying plaintiff's restraints.

With respect to the objective element and the "degree of injury to the wrists," Russo, 2015 WL 7738043, at *5, defendants argue that plaintiff's injuries were insufficiently severe to support an excessive force claim against the non-party C.O. because plaintiff does not allege a permanent injury. See Dkt. No. 30-6 at 10.[10] In reviewing defendants' motion to dismiss, where defendants also raised this argument, the undersigned held that "plaintiff's alleged injury resulting from the tight handcuffs and chain – soreness – is *de minimis*." Dkt. Nos. 16 at 11; 18 at 2 (citing Warren v. Purcell, No. 03-CV-8736 (GEL), 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004) (holding that temporary pain, numbness and swelling as a result of tight handcuffing was "more than likely to prove *de minimis*") and Ruggiero v. Fisher, No. 15-

---

9 The undersigned also observes that plaintiff did not request protective custody at the time the non-party C.O. applied the handcuffs. Thus, the officer could not have been said to have applied the handcuffs in a certain way in retaliation for requesting protective custody as no such request had been made. See Livingston Deposition at 37 ¶ 9, 45 ¶ 4.

10 Defendants again urge the Court to follow Burroughs, which suggests that permanent or serious injury is a prerequisite to an excessive force claim. See id. at 11. In reviewing defendants' motion to dismiss in this case, the undersigned held that Burroughs and similar cases did not apply because the complaint in Burroughs lacked allegations of wantonness, which allowed the Court to bypass the subjective analysis and dismiss the Eighth Amendment excessive force claim on the objective prong alone, whereas plaintiff here did allege defendants' malice or wantonness. See Dkt. No. 16 at 9 n.7; Burroughs, 138 F. Supp. 3d at 213.

CV-00962 (RJA/JJM), 2018 WL 7892966, at *7 (W.D.N.Y. Sept. 27, 2018), report and recommendation adopted sub nom. Ruggiero v. Fisher, No. 15-CV-962-A, 2019 WL 1438810 (W.D.N.Y. Apr. 1, 2019) (holding that temporary discomfort resulting from tight restraints to be de minimis)).[11] As the undersigned noted, "[t]he absence of serious injury [while] relevant to the Eighth Amendment inquiry, . . . does not end it." Hudson, 503 U.S. at 7 (1992); Dkt. No. 16 at 11. Rather, "the malicious use of force to cause harm[] constitute[s] [an] Eighth Amendment violation *per se*" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).

However, although plaintiff alleged malice or wantonness on the part of the named defendants, he has not alleged malice or wantonness by the non-party C.O. See Blyden, 186 F.3d at 263. As this Court has already held, plaintiff's injuries are de minimis, and the complaint lacks allegations of wantonness or maliciousness against the non-party C.O.; thus, plaintiff's injuries do not "constitute [an] Eighth Amendment violation *per se*." Blyden, 186 F.3d at 263. Thus, an Eighth Amendment excessive force claim against the non-party C.O. would fail. See Benitez v. Ham, No. 9:04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *16 (granting summary judgment when plaintiff did not suffer serious injury and the record did not contain complaints of maliciousness or wantonness against the defendant). As plaintiff fails to prove an underlying constitutional violation – excessive force on the part of the non-party C.O. who applied the handcuffs – his claims against defendants for failure to intervene cannot proceed. See Rolkiewicz, 442 F. Supp. 3d at 646 ("Where, as here, the Court has concluded already that the predicate claim, excessive force, cannot survive summary judgment,

---

11 The Court does not provide plaintiff copies of these cases as they were provided to plaintiff with his copy of the Motion to Dismiss. See Dkt. No. 16-1.

summary judgment is appropriate on the dependent failure to intervene claim as well.") (internal citations omitted).

Accordingly, it is recommended that the defendants' motion for summary judgment be granted with respect to plaintiff's failure-to-intervene claims for failure to demonstrate an underlying constitutional violation.

**3. Supervisory Liability**

Absent a subordinate's underlying constitutional violation, there can be no supervisory liability. See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see also Elek v. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability."). Here, plaintiff's underlying Eighth Amendment claims for excessive force and failure to intervene fail as a matter of law. See Section II.B.1 supra. Consequently, plaintiff's supervisory liability claim against defendant Hoffnagle also fails. Accordingly, it is recommended that the defendants' motion for summary judgment be granted with respect to plaintiff's supervisory liability claim against defendant Hoffnagle.

**B. Qualified Immunity**

Defendants alternatively argue that even if plaintiff's constitutional claims were substantiated, they are entitled to qualified immunity. See Dkt. No. 30-6 at 15. Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y 2002), aff'd 80 F.App'x 146 (2d Cir. N2003). Even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe his acts did not violate those rights." Kaminsky v, Rosenblum, 929 F.2d 922, 925 (2d Cir.1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).

In analyzing the applicability of qualified immunity, courts may determine "whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 546 U.S. 730, 736 (2002) (citations omitted). This analysis is "said to be appropriate when 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all.'" Kelsey v. County of Schoharie, 567 F.3d 54, 61 (2d Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)). Only if there is a constitutional violation does a court proceed to determine whether the rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 229-30 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See Section II.B.1.ii. supra. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F.Supp. 2d at 230. Accordingly, it is recommended that the defendants' motion on this ground, if reached, be granted.

### C. Spoliation of Evidence

Plaintiff's opposition included a request that the Court sanction defendants for spoliation of evidence. See Dkt. No. 35 at 5-6. Plaintiff alleges the defendants failed to preserve video footage of his detention in Upstate's holding cell. See id. This request repeats one the plaintiff made to the Court in an earlier iteration of this case, which the Court dismissed without prejudice. See Livingston v. Hoffnagle, No. 9:17-CV-1158 (MAD/DEP), 2019 WL 409366, at *1-2, n.2 (N.D.N.Y. Feb. 1, 2019) ("Livingston I") (citing Livingston v. Kelly, 423 F. App'x 37, 42 n.5 (2d Cir. 2011) (summary order). This Court denied that request, noting that "[n]othing in the record suggests the Defendants destroyed the videotapes," and that the video footage was lost "due to equipment failure and loss of data in the hard drive." Id. at 2 n.2. (internal quotation marks and citations omitted). In raising his spoliation claims in this case, plaintiff has not submitted any additional evidence supporting his conclusory claims. See generally Dkt. No. 35. Thus, the Court's rationale in Livingston I applies, and the Court finds that plaintiff has failed to demonstrate that defendants engaged in spoliation. As such, the Court declines to sanction defendants for spoliation of evidence.

## IV. Conclusion

**WHEREFORE**, based on the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 30) be **GRANTED**; and it is further

**ORDERED**, that plaintiff's request for sanctions for spoliation of evidence, dkt. no. 35 at 5-6, is **DENIED**, and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(e), 72.[12]

Dated: August 3, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

[12] If you are proceeding pro se and are served with this Report – Recommendation & order by mail, three (3) additional days will be added to the fourteen (14)-day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then that deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.